

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 8, 1961

Hon. J. M. Falkner
Banking Commissioner
of Texas
Department of Banking
Austin 14, Texas

Opinion No. WW-838-A

Re: Whether a credit union
is prohibited from en-
gaging in business in
more than one place or
maintaining a branch
office, under provisions
of Art. 342-903 and
Art. 2463, V.C.S.

Dear Mr. Falkner:

Upon reconsideration, Opinion No. WW-838 is withdrawn
and this opinion substituted in lieu thereof.

You have requested the opinion of this office as to the
authority of a credit union incorporated under the provisions
of Article 2463, V.C.S., to engage in business in more than
one place or maintain a branch office.

Article 2463, V.C.S., is in part as follows:

"Ten (10) or more residents of this
State may associate themselves to-
gether by Articles of agreement and
form a credit union and upon approval
of the State Banking Board, may be-
come a corporation upon complying
with such provisions of the law regu-
lating State banks as may be applicable
to the transaction of business as herein
authorized to be done... "(Emphasis
supplied through-out).

Article 2462, V.C.S., provides that a credit union
"may receive the savings of its members in payment for shares
or as deposits... It may lend money to its members within
the limits and subject to the restrictions provided by
law...."

Article 2466, V.C.S., provides that the by-laws of the
credit union "shall prescribe...6. The conditions on which
deposits may be made and withdrawn."

While it is immediately apparent from the above provisions that credit unions exercise two of the most important functions of banking, the receiving of deposits and the lending of money, it must be recognized that credit unions or associations are not "banks" as that term is defined in the Texas Banking Code of 1943 (Article 342-101 et seq., V.C.S.) or as that term is commonly used and understood. Furthermore, the operations of a credit union in receiving deposits or lending money are substantially different from the corresponding operations of a commercial bank, and in fact, the functions and underlying concept of a credit union are basically different from those of a commercial bank. For example, a bank serves the general public, whereas a credit union is organized "for the purpose of promoting thrift among its members" (Art. 2461), and may lend money to members only (Art. 2462). The by-laws of a credit union are required to prescribe the conditions of residence or occupation which qualify persons for membership (Art. 2466), which is usually employment by or in a specified corporation or governmental unit. Without going into great detail, commercial banks provide a number of functions and services which credit unions cannot, such as the transfer of funds by drafts or bills of exchange, the providing of checking accounts, trust departments and safety deposit boxes.

Banks, of course, serve as depositories for both private and public funds, whereas the capital, deposits and surplus funds of a credit association which are not lent to its members must be deposited in state or national banks or savings and loan associations or trust companies approved by the Banking Commissioner, or invested in certain government bonds (Art. 2462 and 2475).

The fact that credit unions do not serve as depositories for their own funds points up another distinction between banks and credit unions, namely, the location and type of place in which each transacts its authorized business. A state bank is authorized by Article 342-501 to invest a specified percentage of its capital and surplus in a domicile, including land and building, plus an additional amount in furniture and fixtures. Additionally, Article 342-903 specifically provides:

> "No state, national or private bank shall engage in business in more than one place, maintain any branch office or cash checks or receive deposits <u>except in its own banking house</u>...."

There is no provision in the basic legislation establishing and governing credit unions (Articles 2461 through 2484b, V.C.S.) which specifically authorizes or prohibits a credit

union from engaging in business in more than one place or maintaining a branch office. The question thus presented for determination is whether that part of Article 2403 reading "... may become a corporation upon complying with such provisions of the law regulating State banks as may be applicable to the transaction of business as herein authorized to be done" makes the law prohibiting a State bank from engaging in business in more than one place or cashing checks or receiving deposits except in its own banking house applicable to the transaction of business authorized to be done by credit unions. We have concluded that the restriction against engaging in business in more than one place contained in the Banking Code is not applicable to the business transacted by credit unions incorporated under the provisions of Article 2463.

The statutes and the nature of the business conducted by commercial banks and credit unions respectively, clearly contemplate that a commercial bank will conduct its functions in a specific structure, its banking house, and indeed in everyday language the word "bank" brings to mind the massive columns, granite or marble facade and austere dignity of the buildings favored in previous years or the glass and aluminum, the drive-in windows and contemporary atmosphere of more recent design. A credit union, on the other hand, ordinarily serves its members from an office or space rented or set aside in the plant or public building housing its members. Indeed, the instruction sheet furnished by the State Banking Department to those planning on organizing a credit union suggests:

> "Solicit the assistance of the sponsoring company or employer, and if possible, arrange....for office space or other quarters for your credit union...."

It is easy to imagine that a credit union sponsored by a company with more than one plant would have difficulty serving its members if it could not maintain some type of facility, or transact business at the various plants where a part of the members work. It is difficult to conceive of any such activity on the part of credit unions resulting in the concentration of financial power which the provision against branch banking contained in Article 16, Sec. 16 of our Constitution was apparently designed to guard against.

We therefore conclude that the basic differences in the business transacted by a commercial bank and a credit union make inapplicable to credit unions that portion of the Banking Code prohibiting a State bank from engaging in business in more than one place.

SUMMARY:

A credit union is not prohibited from engaging in business in more than one place or maintaining a branch office under provisions of Article 342-903 and Article 2463, V.C.S.

Very truly yours,

WILL WILSON
Attorney General

By: *Morgan Nesbitt*

Morgan Nesbitt
Assistant

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Arthur Sandlin
W. Ray Scruggs
Robert T. Lewis

REVIEWED FOR THE ATTORNEY GENERAL
By: Leonard Passmore